UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **ELIZABETH TAYLOR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 3:23-cv-1212-LCB** |
| ) | |
| **FRANK BISIGNANO,** ) | |
| *Commissioner, Social Security* ) | |
| *Administration,* ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

On September 13, 2023, Claimant Elizabeth Taylor filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer and a copy of the administrative record on November 13, 2023. (Doc. 8). Taylor filed a brief in support of her position on December 13, 2023, and the Commissioner filed a response on February 2, 2024. (Docs. 10, 13). Taylor did not file a reply brief. Accordingly, the issues are now fully briefed, and Taylor's case is ripe for review. For the reasons below, the Commissioner's final decision is due to be affirmed.

### I. BACKGROUND

On November 10, 2020, Taylor filed an application for a period of disability

1

and disability insurance benefits, alleging disability beginning on May 30, 2018. (Tr. 136, 374-80). These claims were denied initially on March 24, 2021, and denied again upon reconsideration on April 12, 2022. (Tr. 136–44; 146–155). Thereafter, Taylor then requested a hearing before an Administrative Law Judge, Judge Clarence Guthrie ("the ALJ"), who held a telephone hearing on January 4, 2022. (Tr. 108–35). An impartial vocational expert ("VE") testified at this hearing. (Tr. 110). The ALJ subsequently issued an unfavorable decision. (*See* Doc. 13 (citing Tr. 19–76)). Taylor requested review of the ALJ's decision by the Appeals Council; on June 23, 2022, the Appeals Council vacated the ALJ's decision, remanding the case back to the ALJ. (Tr. 177-82). A second administrative hearing was held by the ALJ on January 17, 2023. (Tr. 79–107). On March 20, 2023, the ALJ again issued an unfavorable position. (Tr. 11–36). Though Taylor sought review by the Appeals Council a second time, this request was denied and the ALJ's decision became the Commissioner's final decision. (Tr. 1–7). This lawsuit followed.

## II.    THE ALJ'S DECISION

After the hearing, the ALJ issued a written opinion explaining his decision. (Tr. at 11–29). In issuing his decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. *See* 20 CFR 416.920(a). The steps are followed in order and, if it is determined that the claimant is or is not

disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Taylor did not engage in substantial gainful activity during the relevant time period. (Tr. at 13–14). Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ is to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities . . . ." *Id*. If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. If she does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Taylor had the following severe impairments: "obesity; degenerative disc disease; fibromyalgia; psoriatic arthritis; and psoriasis." (Tr. at 14 (citing 20 CFR 404.1520(c))).

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an

impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Otherwise, the ALJ proceeds to the next step. In this case, the ALJ found that Taylor's impairments did not meet or equal any of the listed criteria. (Tr. at 20). Specifically, the ALJ reviewed listings for musculoskeletal disorders and mental disorders. (*Id.* ("I have considered all listings, but specifically listings 1.15, 1.18, and 12.06.")). After reviewing the evidence, the ALJ concluded that there was no evidence of medical findings that were the same or equivalent to any of the listed impairments. (*Id.*). Therefore, the ALJ proceeded to step four.

Step four of the evaluation requires an ALJ to first determine the claimant's residual functional capacity ("RFC"), and whether she has the RFC to perform the requirements of any past relevant work. 20 C.F.R. 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In Taylor's case, the ALJ found that she had the residual functional capacity to perform a full range of sedentary work as defined in 20 CFR 404.1567(a) with specific limitations:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could occasionally climb ramps or stairs. She could never climb

4

ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, or crawl. The claimant was capable of walking with the use of one cane with full use of the other upper extremity for fine or gross movements. She could occasionally be exposed to weather or humidity, extreme cold, extreme heat. She was limited to no exposure to excessive vibration. She could never be exposed to workplace hazards such as moving mechanical parts and high, exposed places.

(*Id.*; *see* Tr. 20–27). Given this RFC, the ALJ determined that Taylor was able to perform her past relevant work as a telemarketer given that such work would not require Taylor to perform work-related activities precluded by her RFC. (Tr. at 27). This finding was based in part on testimony from a vocational expert who testified at Taylor's hearing. Based on the findings above, the ALJ determined that Taylor was not disabled as defined by the Social Security Administration. (Tr. at 28).

### III.   Standard of Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court also must affirm if the decision is

5

supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Additionally, in order

> [t]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Zuba-Ingram v. Commissioner of Social Security*, 600 Fed. Appx. 650, 656 (11th Cir. 2015) (quoting *Booth v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)). If the claimant establishes that he has an impairment which could reasonably be expected to produce his alleged symptoms, then the intensity and persistence of his alleged symptoms and their effect on his ability to work must be evaluated. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The Eleventh Circuit has recognized that the Commissioner's regulation at 20 C.F.R. § 404.1529 is consistent with the Eleventh Circuit's pain standard, and the ALJ need not quote the pain standard verbatim as long as the ALJ applies it. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

When evaluating a claimant's statements regarding the intensity, persistence or limiting effects his symptoms, ALJs consider all the evidence, objective and subjective. 20 C.F.R. §§ 404.1529, 416.929. ALJs may consider the nature of the claimant's symptoms, the effectiveness of medication, a claimant's treatment, a

claimant's daily activities, measures a claimant takes to relieve symptoms, and any conflicts between the claimant's statements and other evidence. 20 C.F.R. §§ 404.1529(c)(3)–(4), 416.929(c)(3)–(4). A court "will not disturb a clearly articulated" finding about subjective complaints supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

## IV. Taylor's Arguments

Taylor presents a single issue for the Court's review: "Whether the ALJ failed to properly evaluate the credibility of the Plaintiff's complaints of pain consistent with the Eleventh Circuit Pain Standard." (Doc. 10 at 5). Within this broader issue, Taylor presents several supporting bases for the remand of her case. Taylor specifically challenges the ALJ's assessment of certain evidence, including that he "improperly discounted Taylor's testimony" by failing to consider relevant medical records consistent with Taylor's testimony and that he incorrectly found Taylor's daily activities "inconsistent with her allegations of debilitating pain and limitations" because he "omitted several limitations when reporting her daily activities." (Doc. 10 at 12–13, 15).

### A.   The ALJ properly evaluated Taylor's medical records.

The ALJ acknowledged that Taylor's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. at 22). However, he found Taylor's statements regarding the intensity, persistence, and

7

limiting effects of the symptoms were inconsistent with the medical and other evidence in the record. (*Id.*). Taylor argues that this determination is not supported by substantial evidence because the ALJ "did not consider all of [Taylor's] medical records when reaching his decision and minimized or ignored the evidence that supports [Taylor's] description of debilitating pain." (Doc. 10 at 9).

Taylor points first to the ALJ's statement that "there was some indication her treatment was effective at controlling her pain as she 'reported at least some relief from injections and was described as doing well with improved pain response from Tramadol.'" (*Id.* at 8 (quoting Tr. 24)). Taylor interprets the ALJ's focus on these findings as suggesting that he failed to consider "all of the Plaintiff's medical records when reaching his decision and minimized or ignored the evidence that supports the Plaintiff's description of debilitating pain." (Doc. 10 at 9).

However, in actuality, the ALJ did properly assess the objective evidence in the record, but came to a different conclusion than Taylor did regarding how the records interacted. The ALJ specifically stated that "despite her arthritis and degenerative disc disease, musculoskeletal and neurological examinations in the relevant records were largely normal." (Tr. 24, 607, 613, 617, 620-21, 625, 342, 652, 665, 677, 680, 685-86, 729, 766). Though Taylor is correct that an ALJ may not simply "pick and choose among a doctor's records to support his own conclusion," *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009), the ALJ analyzed

8

the medical records providing substantial evidence in support of his determination and demonstrating the disparity between the records and Taylor's subjective complaints. (*See* Doc. 13 at 15 (citing *Truesdell v. Comm'r of Soc. Sec.*, No. 20-13416, 2022 WL 401548, at *6 (11th Cir. Feb. 10, 2022) (holding that the ALJ identified inconsistencies with Plaintiff's allegations and the evidence by considering Plaintiff's medical condition and supporting her assessment with citations to the Plaintiff's medical records and treatment history, amongst other factors)).

"[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Mitchell,* 771 F.3d at 782 (quoting *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005)) (internal quotation marks omitted). The ALJ cites to a sufficient variety of objective records which demonstrate substantial evidence. (*See* Tr. at 14-17, 24).

**B. The ALJ properly considered Taylor's testimony considering her limitations in her daily activities.**

Taylor additionally argues that even though the ALJ considered the daily activities which Taylor was able to perform, the ALJ failed to take into consideration the limitations that she had placed on her ability to perform those daily activities. These limitations included taking breaks and resting in between activities such as

9

laundry and dusting, "ha[ving] to rely heavily on the cart to lean on" when grocery shopping, needing help with putting on her shoes and preparing meals, and only being able to fold laundry or iron while sitting. (Doc. 10 at 13–14 (citing Tr. 94, 468–69)). Citing to *Horton v. Barnhart*, 469 F. Supp. 2d 1041, 1047 (N.D. Ala. 2006), Taylor argues that "the ALJ improperly dismissed the qualifying limitations the Plaintiff placed on many of those activities" and "[t]he ALJ's attempt to show inconsistencies between the Plaintiff's allegations of disabling symptoms and her statements regarding her daily activities is not supported by substantial evidence when the activities are not accurately described." (Doc. 10 at 14).

However, Taylor's subjective complaints did not align with the record before the ALJ:

> that the claimant has made allegations of problems sitting but she was described as sitting in no apparent distress during her treatment visits and she reported being able to do activities such as paying her bills, shopping, driving, ironing, folding laundry, preparing meals, and taking care of her children which includes helping with homework, organizing their day, and handling their appointments despite her allegations of difficulties with sitting . . . . This allegation is not supported by the record. These treatment notes and her reported activities in addition to the normal physical findings and indication of at least some pain relief with treatment as discussed above support a finding that the claimant would have been able to perform the requirements of sedentary work with the postural limitations noted in the residual functional capacity during the relevant period . . . .

(Tr. 25). Even Taylor's own testimony evidenced that "she was able to cook one meal a day during the relevant period as well as able to do light housework including

10

laundry, wiping counters, or dusting." (Doc. 13 at 16 (citing Tr. 22, 92-94)). Again, it is not this Court's role to "decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner" and must affirm if substantial evidence supports the ALJ's decision. *Mitchell*, 771 F.3d at 782. There is substantial evidence to support that not only were Taylor's limitations not as significant as she asserted, but that the ALJ considered the totality of Taylor's testimony and statements within her objective medical records to find that she could perform past relevant work as a telemarketer.

Accordingly, the Commissioner's decision is **AFFIRMED**.

**DONE** and **ORDERED** August 14, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE